## Insurance of Personal Property in Course of Transportation

SAYLOR, Deputy Attorney General, September 20, 1932.—You have asked to be advised whether domestic stock marine insurance companies may issue what are known as floater policies covering loss of or damage to property, whether in the course of transportation or otherwise.

Section 202 of The Insurance Company Law of May 17, 1921, P. L. 682, prescribes the purposes for which domestic companies may be incorporated. Stock fire, stock marine and stock fire and marine insurance companies are given the power, under paragraph two of subsection (b), to do the following:

"For making insurances . . .

"Upon vessels, boats, cargoes, goods, merchandise, freight and other property,—against loss or damage by all or any of the risks of lake, river, canal, and inland navigation and transportation; upon automobiles, airplanes, seaplanes, dirigibles, or other aircraft, whether stationary or in operation or in transit, against loss or damage by fire, explosion, transportation, collision, or by burglary, larceny, or theft; not including, in any case, insurances against

loss by reason of bodily injury to the person; and to effect reinsurance of any risk provided for in this clause."

You state that under this clause such companies have issued what is colloquially known as a "personal property floater" or "tourist floater" policy, which insures the owner of jewelry, furs, baggage and other personal possessions against all risks of loss or damage from any cause whatsoever, whether the property insured be in transit or at rest in the residence of the insured or elsewhere. The question arises whether, in covering risks to such personal belongings while not in the course of transportation, such companies are exceeding their powers.

Paragraph two of subsection (b) of section 202 indicates that the risk that may be insured by fire or marine companies is that resulting from loss or damage due to navigation or transportation and not such loss or damage as arises when the article insured is not in transit. This section specifies that the insurance may be made "against loss or damage by all or any of the risks of lake, river, canal, and inland navigation and transportation" as far as such loss or damage applies to "vessels, boats, cargoes, goods, merchandise, freight and other property." Jewelry, furs, guns, cameras and other personal property must necessarily be included in the words "other property."

The remaining phraseology of paragraph two referring to automobiles, airplanes, etc., includes loss of or damage to them "whether stationary or in operation or in transit." Inclusion of the word "stationary" in the clause relating to these subjects of insurance indicates that the legislature did not intend to give the power to fire and marine companies to insure "other property" while stationary. As far as this section is concerned, it would seem that fire and stock companies do not have the right to issue floater policies, by whatever name they may be known, insuring personal property while not in transit.

However, we are informed that it has been the long-established custom of marine insurance companies to insure against loss of or damage to wearing apparel, guns, furs, cameras, etc., whether actually in the course of transportation or at rest in a more or less fixed location. These companies contend that such articles do not have a definite or fixed location but are subject to constant movement and transit and that there is no other way of adequately insuring them.

In our opinion, the legislature has recognized this custom in section one, subsection (a), of the Act of May 13, 1927, P. L. 998, which defines the terms "marine insurance," "marine business" and "marine risks" as follows:

"Vessels, craft, aircraft, cars, automobiles, and vehicles of every kind (excluding automobiles operating under their own power, or while in storage not incidental to transportation), as well as all goods, freights, cargoes, merchandise, effects, disbursements, profits, moneys, bullion, precious stones, securities, choses in action, evidences of debt, valuable papers, bottomry, and respondentia interests, and all other kinds of property and interests therein in respect to, appertaining to, or in connection with any and all risks or perils of navigation, transit or transportation, including war risks, on or under any seas or other waters, on land or in the air, or while being assembled, packed, crated, baled, compressed, or similarly prepared for shipment, or while awaiting the same, or during any delays, storage, transhipment or reshipment incident thereto, including marine builder's risks, and all personal property floater risks."

The legislature did not confine its definition of marine insurance to the insuring of vehicles and goods while being prepared for and awaiting shipment and in the course of transportation. It added the words, "and all personal property

floater risks." We must assume that the legislature in framing this definition considered the personal property floater risk to be a form of marine insurance. As such, a marine company may clearly write it.

However, it does not necessarily follow that a floater policy which a marine company may write is a marine policy, or that a floater policy is limited in its coverage to the usual coverage of a marine policy. In writing a floater policy a marine company is not restricted by the limitations imposed upon it when writing a marine policy.

It is true that under the powers granted by section 202 of the Act of 1921, subsection (c), stock casualty companies may be incorporated for a large variety of purposes. These include insurance against loss by burglary or larceny or theft or forgery. Furs, jewelry, guns, cameras, etc., while at rest in their owner's house or elsewhere may be insured by casualty companies. But such coverage is not as broad as that given by floater policies; it does not cover loss or damage occurring while the insured article is elsewhere than in the situs specified in the policy or loss or damage from causes other than burglary, larceny or theft.

Through a floater policy a marine company gives broader coverage than a casualty company can give. This policy covers articles which, by reason of their nature and use, do not have a fixed location and are not susceptible of coverage by a casualty policy. Unless an owner can obtain a floater policy from a marine insurance company—or a fire or fire and marine company which may also write it under the provisions of section 202 (b)—he would be obliged to take out a new casualty policy whenever his property came to rest at any place, his home or elsewhere.

While the floater policy fills a need for such insurance coverage as it affords, it must not be used to cover the field which the policies of casualty companies properly occupy. For example, there is no reason why a floater policy should cover while stationary objects of art, pictures, paintings, etc., which ordinarily have a fixed situs; they may be insured against burglary, theft and larceny by a casualty company policy. While in transit or packed and awaiting shipment, they may be insured by a marine policy. While stationary, these articles should be insured by a floater policy only against damage resulting from causes other than burglary, theft and larceny. This is based on the distinction between articles having a permanent situs and articles of personal adornment or such as guns, cameras, etc., which are constantly in the course of transportation by their owners or by carriers. This distinction is based on the character of the property itself or upon the use to which it is put. For this reason, it is our opinion that the "all risk personal property floater policy" may be written by marine companies (and fire and fire and marine companies) to cover articles, whether in the course of transportation or otherwise, which, by reason of their nature and use, ordinarily do not have a fixed location. They may not be written to cover those articles which ordinarily do have such a situs, except with respect to damage or loss resulting from causes other than burglary, theft and larceny.

Therefore, you are advised that domestic stock marine insurance companies (and also domestic stock fire and fire and marine insurance companies) may issue floater policies insuring against all risks of loss of or damage to personal property which, by reason of its nature and use, does not have a fixed location. They may not issue such policies to cover personal property which is ordinarily stationary, except when in the course of transportation or while being packed or awaiting shipment and except when the coverage includes risks not insurable by casualty companies.                    From C. P. Addams, Harrisburg, Pa.